Filed 11/10/25

VERMONT SUPERIOR COURT
Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00146

| Timothy Johnson et al v. Jeremy Sullivan |
| --- |

## RULING ON PLAINTIFFS' THIRD MOTION IN LIMINE REGARDING DAMAGES

On October 14, 2025, Plaintiffs filed a motion in limine to exclude certain evidence tending to show the fair market value of the subject property at different times. Specifically, Plaintiffs wish to exclude, as irrelevant and/or as substantially more prejudicial than probative: (a) a professional appraisal done prior to any alleged tree-cutting, and received by Plaintiffs shortly before they discovered the alleged tree-cutting, which valued the subject property at $562,000; and (b) evidence showing that the property was sold, several months after this lawsuit was brought, for $520,000, which is $10,000 more than the parties' contract price of $510,000. For reasons that follow, the Court will deny the motion.

As this motion concerns different concepts and principles pertaining to the law of remedies for breach of contract, the Court believes it helpful to frame its analysis with a fairly plain-spoken explanation of that area of law, from Professor Dobbs:[1]

> The traditional goal in awarding damages for breach of contract is to award a sum that will put the non-breaching party in as good a position as he would have been in had the contract been performed. This gives him the benefit of his bargain, that is, the "profit" he would have made upon performance. This is said to give him his expectancy and to protect his "expectation interest." An example of this basic rule is the case of a simple sale of realty. If Seller contracts to sell his home for $20,000, the transfer to take place three weeks later, and the house is really worth $25,000, then the buyer "expects" a net gain in his assets of $5,000. This is because he will pay $20,000 in exchange for a value of $25,000. There are many reasons why a seller might agree to such an exchange. He might simply misjudge the market value of his house, or he might be in a hurry to sell and willing to make sacrifices to do so. Or the house might be worth exactly the agreed price at the date the contract is made, but values might suddenly rise before the performance is due. Whatever the reason, however, the seller has agreed to a bargain and the buyer is normally entitled to the benefits of it. Thus in the example, if the seller breaches, the buyer will recover $5,000 and perhaps certain incidental expenses as well.

> Since the purpose of the expectancy recovery is to put the non-breaching party in as good a position as he would have achieved had the contract been performed, it is

---

[1] Professor Dobbs' treatise on the law of remedies has been cited many times over the years by our Supreme Court.

sometimes necessary to award him special or consequential damages in addition to the basic measure of his expectancy. For example, if a seller of a tractor fails to deliver it as promised, the buyer may be forced to pay more for a similar tractor. The difference in the cost would form his basic expectancy damages. However, if the seller's failure to deliver cost the buyer the loss of a crop, this special or consequential damage would also be recoverable, subject to the limitation that such damages must be within the contemplation of the parties in order to be recovered.

Dan B. Dobbs, *Handbook on the Law of Remedies* § 12.1, at 786-787 (1973). The Court also finds helpful another clarifying passage:

The general rule applicable to most real estate sales contracts is that the vendor who commits a total breach of his contract to convey land, for any reason other than because of a title defect, is liable for loss of the bargain damages to his purchaser, plus any consequential damages recoverable under general rules. This means that the vendor is liable for the difference between the contract price and the value of the land, with appropriate adjustments for any amounts still unpaid on the contract price. The value of the land is calculated as of the date of breach, which is normally the date on which the deed is to be delivered. For example, if the contract price is $10,000 and the value of the land at breach is $12,000 (either because the market is rising or the buyer made a good contract), the damages would be $2,000, the gross "profit" the buyer would have had if the contract had been performed.

*Id.* § 12.8, at 833-34.[2]

Here, at trial, Plaintiffs will *not* be seeking "loss of the bargain" or "lost profit" damages as described by Professor Dobbs. That is because of this Court's ruling on Defendant's motion for summary judgment regarding Plaintiffs' claim for breach of contract. Defendant correctly argued in his motion that proof of damages is an essential element of a claim for breach of contract, on which the claimant (Plaintiffs) bear the burden of proof. Plaintiffs responded without offering any proof of their loss of the bargain damages, and only offered proof of certain special or consequential damages. It appears that Plaintiffs actually received the professional appraisal in late November of 2023, but for whatever reason (as is their prerogative), they did not present the appraisal to the Court for purposes of proving that they had suffered a "lost profits" style of injury. Indeed, Plaintiffs' opposition brief clarified that, for purposes of their claim for breach of contract, Plaintiffs were *only* seeking special or consequential damages. The Court therefore granted partial summary judgment to Defendant, which means that Plaintiffs now lack any claim for breach that is predicated on "loss of the bargain" damages. It follows, therefore, that the appraisal, showing the market value of the subject property just prior to closing (but absent the fact of tree cutting as alleged by Plaintiffs), is not needed by Plaintiffs for purposes of proving, at trial, the amount of their "lost profits" injury (which presumably was $52,000 (*i.e.*, $562,000 less contract price of $510,000)). The appraisal is thus irrelevant in that sense and for that reason, regardless of whatever it may have proven.

---

[2] *See also id.* § 12.3, at 798 ("[S]uppose a land seller agrees to sell Blackacre to the plaintiff for $10,000, title to be transferred on March 1. The defendant deliberately refuses to make the transfer on March 1, at which time the land is worth $15,000. In such a case the plaintiff-buyer's general damages are said to be $5,000, and he will recover this sum if he likes."); *Restatement (Second) of Contracts* § 347 cmt. b ("If no performance is rendered [by the breaching party], the loss in value caused by the breach is equal to the value that the performance would have had to the injured party." (citing Illustrations 1 and 2)).

This conclusion does not necessarily resolve the pending motion in limine, however. Defendant has asserted a counterclaim for breach of the implied covenant of good faith and fair dealing, and Defendant claims that the valuation evidence is relevant to that claim. Defendant asserts that the appraisal figure and the sale price figure reveal that Plaintiffs' refusal to perform, and their decision to essentially declare an anticipatory repudiation as a result of the alleged tree-cutting, were bad faith actions, taken without any basis or reason. Defendant's theory is that, because the property's appraised value was substantially higher than the contract price, and because the property later sold (after the alleged tree-cutting) for $10,000 *more* than the contract price, the Plaintiffs—had they simply gone forward, performed, and closed on the property transfer—would likely have come out "ahead" financially. In that sense, Defendant finds Plaintiffs' conduct and position unreasonable and in bad faith. Here are some pertinent excerpts from Defendant's legal memorandum, filed in opposition to the pending motion, that articulates Defendant's theory of the relevancy of the property valuation information to Defendant's claim of bad faith:

> The [property valuation] evidence is relevant on whether Plaintiffs' refusal to close unless Defendant reduced the contract price down to $475,000 had a good faith basis.
>
> [ . . . ]
>
> [T]he [valuation] Evidence demonstrates that prior to this lawsuit and to Plaintiffs' demand in a reduced contract price, Plaintiffs were well aware that the property had a higher value than they claimed. This directly supports Defendant's counterclaim as there was no sufficient basis to excuse Plaintiffs from contract performance.
>
> [ . . . ]
>
> A decision to refuse to close unless the property is sold for $475,000, despite evidence suggesting that the property is worth more, is directly relevant to whether Plaintiffs acted reasonable, and is appropriately deemed a breach of contract.
>
> [ . . . ]
>
> Will the Jury perceive [the difference between the appraisal price and the demand price of $475,000] as being good grounds on plaintiffs' part for their breach? Or, how will the Jury interpret Plaintiffs' claims for consequential damages, in light of the sole cause for such being Plaintiffs' refusal to purchase property which had a value in excess of what they were buying it for?

Def.'s Opp'n to Motion *In Limine* Regarding Damages (Oct. 28, 2025), at 2-4.

However, based on the above discussion from Professor Dobbs, Plaintiffs' knowledge of the profit they would have realized from the deal ($52,000) is not a basis on which to find that their conduct was in bad faith. It actually tends to show that their lawsuit, which apparently had sought "loss of the bargain damages" when filed, had some reasonable evidentiary basis, at least on the issue of their general damages. Assuming that the tree-cutting occurred as alleged (which is certainly a disputed factual issue here), Plaintiffs' knowledge of the appraisal could support the inference that

Plaintiffs' demand price ($475,000) was merely an effort to preserve their expected profit (assuming that the loss of trees reduced the value of the subject property by roughly $35,000).

The other way of looking at it is this: assuming Defendant "left money on the table," by entering into a contract that would give him only $510,000 at closing, rather than the market's price of $562,000; the Defendant is not thereby immunized from liability for any of his breaches that cause direct monetary injuries to Plaintiffs that are less than the amount of money that Defendant left on the table. By the same logic, Plaintiffs are not required by the implied covenant of good faith and fair dealing to bear any and all losses caused by Defendant's breach, so long as Plaintiffs still come out "ahead" to some degree or extent. Here, Plaintiffs apparently bargained for a deal that was favorable to them, considering the property's actual worth (or valuation) as compared to the contract price. When Plaintiffs so contracted, that deal then became their enforceable right. With that contract, Plaintiffs could rightly insist upon paying only the contract price to Defendant at closing, rather than any other (higher) price, regardless of what the market had said.[3] Plaintiffs are not obligated to "give away" any part of that favorable deal—some or all of their likely profits from the deal. They are not required to absorb all losses caused by Defendant's breach, so long as the breach still leaves Plaintiffs "even" or "ahead," given what the market said about the value of the thing they contracted to purchase (assuming all trees were intact). Capitalistic tendencies and motives, to enforce one's own right to a good deal and to realize a full profit from such a deal, are not bad faith tendencies or motives. *See Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 208 (1993) (each party to a contract impliedly promises "not to do anything to undermine or destroy *the other's rights* to receive the benefits of the agreement") (emphasis added).[4]

The Court has given this issue careful consideration, and it cannot find that Plaintiffs' knowledge of the actual market value of the property that they were contracted to purchase is relevant to Defendant's claim that Plaintiffs' actions in claiming anticipatory repudiation by Defendant, demanding a lowered sale price (below the contract price) to still consummate the sale (given the supposedly diminished condition of the property), and suing for breach of contract for their alleged injuries, were in bad faith. Of course, if the tree-cutting allegation was entirely fraudulent or contrived by Plaintiffs, that is another factual circumstance entirely. If that sort of conduct is established, there would appear to be bad faith, apart from Plaintiffs' knowledge of the appraised value. However, on the assumption that the tree-cutting occurred as alleged, and on the assumption that it reduced the fair market value of the subject property as a whole, the evidence as to Plaintiffs' knowledge of the pre-cutting fair market value of the property (*i.e.*, evidence showing that Plaintiffs knew they had a "good deal") does not tend to show that their conduct, after learning of the tree-cutting, was taken in bad

---

[3] Likewise, if the relevant real estate marked cooled dramatically between time of appraisal and time of closing, such that the FMV dipped below the contract price at time of closing, the seller would likewise have an enforceable right to receive from buyer the full contract price, which means the buyer would be in breach if at closing he merely tendered the current (lowered) FMV. Actions taken by the seller to enforce his favorable contract price under such circumstances would not be in bad faith, but merely profit-seeking.

[4] Relatedly, the Court has difficulty making sense of Defendant's theory that the property valuation information indicates that the positions taken, or actions taken, by Plaintiffs were "not correct." Def.'s Opp'n at 2. There is no "correct" or "incorrect" position in this context. An appraisal is ultimately an opinion, which may be disputed by another's opinion. And a party seeking to enforce the full benefit of his bargain, relying on such an appraisal opinion, is not acting "incorrectly."

24-CV-00146 Timothy Johnson et al v. Jeremy Sullivan

faith. Perhaps the valuation information is relevant in some other way to Defendant's bad faith claim, but the Court does not find it relevant based upon the arguments presented by Defendant.

However, this conclusion still does not resolve the motion. "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Rosas v. Miri Gen. Contracting Inc.*, 782 F. Supp. 3d 15, 18 (E.D.N.Y. 2025) (omitting quotation marks). Thus, "the denial of a motion in limine is appropriate when the trial court can conceive of a set of circumstances that would make the evidence admissible." *State v. Dubois*, 150 Vt. 600, 602 (1988). Here, the valuation evidence—either the appraisal figure or the later sale price, or both—would tend to undercut Defendant's claim that Plaintiffs' supposed breach cost *Defendant* any lost profits or benefit of the bargain. The valuation evidence actually tends to show that Defendant "left money on the table" when he contracted to sell the property for just $510,000. Defendant thus avoided a likely direct economic injury: but for the non-occurrence of the closing with Plaintiffs, Defendant would have lost money, at least relative to what the market had to say about the value of the property. Defendant appears to acknowledge this very point in his opposition filing, though he relies on the later sale price figure ($520,000) to conclude that the amount of loss he would have incurred, had the closing with Plaintiffs taken place, would have been limited to $10,000, rather than $52,000. Def.'s Opp'n at 2.

The property valuation evidence also appears relevant to another issue at trial—the materiality of Defendant's supposed breach. In moving for summary judgment, Defendant argued that the tree-cutting, even if proved as alleged, did not constitute a material or total breach of the parties' contract, and therefore was an insufficient basis for Plaintiffs to claim an anticipatory repudiation, and also an insufficient basis for Plaintiffs to be excused from further performance. As noted in the Court's ruling on Defendant's motion, the question of materiality of breach is generally a question of fact, dependent on the circumstances of the case. *See Johnson v. Sullivan*, No. 24-CV-00146, "Ruling on Def.'s Mot. for Summ J.," at 6 (Vt. Super Ct. Jul. 29, 2025) (citing several authorities). The *Restatement* also contains the following comment:

> Although the relationship between the monetary loss to the injured party as a result of the failure [to perform] and contract price may be significant, no simple rule based on the ratio of one to the other can be laid down, and here, as elsewhere under this Section, all relevant circumstances must be considered.

*Restatement (Second) of Contracts* § 241 cmt. b (alteration added); *see also* 23 *Williston on Contracts* § 63:3 (4th ed., May 2025 update) ("[C]ourts have defined a breach of contract as 'material' if the promisee receives something substantially less or different from that for which the promisee bargained."). Thus, the amount of monetary loss to the injured party (promisee) as a result of the promisor's breach, relative to the contract price, is likely relevant, if not significant, to the question whether the breach was material.

Here, the appraisal does not appear to directly reveal the fair market value of any quantum of trees, or forested acres of land, that was part of the subject property at the time of appraisal. The parties have not supplied a copy of the appraiser's report to the Court in connection with the pending motion, but the parties do not suggest that the appraisal does anything other than declare an overall (aggregated) property value of $562,000 (prior to the loss of any trees). Thus, the appraisal does not, by itself, conclusively or directly show "the monetary loss to the injured party" as a result of Defendant's supposed breach, within the meaning of the *Restatement.*

However, the appraisal presumably takes account of the value of the trees, or the acres of mature forest, at the time of contracting or just prior to the date of the supposed breach.[5] As such, the appraisal is a relevant marker. Indeed, putting aside questions as to the appraisal's accuracy (or the weight it is due), and also putting aside many factors that could affect or impact a sale price agreed to and paid several months later, a factfinder might reasonably infer that the difference between the appraisal price ($562,000) and the later sale price ($520,000) reflects an actual change in the condition of the subject property that decreased the property's overall market value. It will be up to the parties, of course, to convince the factfinder that the price change (of less $42,000) was likely due to a change in the condition of the property (*e.g.*, removal of trees), or for some other reason, or for no pertinent reason. And Defendant may well use the difference between these two property valuation indicators, assuming the difference is reflective of the loss of trees, to convince the jury that the tree-cutting and resulting change in property value was too slight to constitute a material breach. Thus, the appraisal and sale price figures might be used to demonstrate whether the breach (assuming it occurred as alleged by Plaintiffs) was so significant as to be material or total (or not).[6]

The Court is not persuaded by Plaintiffs' arguments under V.R.E. 403. Plaintiffs argue that the jury might conclude that Defendant's alleged tree-cutting does not "matter" because the jury might conclude—from the valuation information—that the tree-cutting did not diminish the value of the property. As just explained above, the valuation information, reflecting property values before and after tree-cutting (as alleged), might be used to demonstrate a loss in the fair market value of the property, due to tree-cutting. Thus, the predicate assumption of Plaintiffs' Rule 403 argument is without basis. Plaintiffs' contention of likely jury confusion is unpersuasive. Plaintiffs will likely need to explain to the jury that they are not pursuing lost profit damages at trial, and explain that they are seeking only special damages, but that is the result of Plaintiffs' tactical decision at summary judgment, and not because the jury may learn that there is evidence that tends to show a "loss of the bargain" injury to Plaintiffs resulting from Defendant's supposed breach. Further, the Court's instructions to the jury on damages will specify the nature of the type of damages actually being sought by Plaintiffs. The jury should be able to discern that "lost profit" damages are different, and not part of Plaintiffs' claim.

In conclusion, therefore, the Court finds that the valuation information has probative value to pertinent issues at trial (as discussed above), and that value is not "substantially" outweighed by a risk of jury confusion or any prejudice.

Electronically Signed on: Monday, November 10, 2025 pursuant to V.R.E.F. 9(d).

_____
Susan A. McManus
Superior Court Judge

---

[5] The parties both presume as such, with regard to the appraisal's scope—it not being limited to an estimate of the value of the residence, for example.

[6] These same figures could also be relevant, to give context to Plaintiffs' demand that the contract price be reduced by $35,000, to account for the loss in the value of the thing that Plaintiffs had contracted to purchase. Again, the Court remains skeptical that the actions of a party taken to secure his own profit from a good deal can be understood as bad faith, but since that claim is to be presented at trial, the valuation evidence might show that the tree-cutting reduced the property value by $42,000 ($562,000 less $520,000), and that would likely give context to Plaintiffs' demand for a reduced purchase price.